WINGATE HAYES, Receiver, v. GEORGE A. KENYON.

A receiver of a bank, appointed under Ch. 126 of the Revised Statutes, commonly called the bank act, to wind it up, represents not only the corporation, but the creditors of the corporation; and may therefore avoid any conveyance to which the bank is a party, made in fraud of its creditors.

In assumpsit for money had and received, brought by such receiver against a former president of the bank, to recover the value of certain securities of the bank wrongfully appropriated by him in payment for his bonus and stock in selling out the bank to a set of worthless adventurers, *Held*, that to maintain the action, it is not necessary to prove that the transaction was injurious to any creditor or stockholder of the bank, or to tender to the defendant the stock sold by him; but, that the receiver might recover the value of such securities upon proof that they belonged to the bank and were wrongfully appropriated by the defendant, and that, before action brought, they had been collected by him, or were due in money by him to the bank.

In such suit, memoranda of the doings of the bank, after the defendant had left the same, kept by the order of a set of persons, who, under the charter, were not qualified to act for it as directors, are not evidence against the receiver of the facts stated in them.

ASSUMPSIT by the plaintiff, as receiver of the Warwick Bank, appointed by this court by virtue of Ch. 126, section 47, of the Revised Statutes, to recover from the defendant, formerly president of the bank, under the money counts, the value of certain moneys and securities of the bank, by him appropriated to his own use.

The case was tried before the Chief Justice, with a jury, at the September term of this court, for the county of Providence, 1861, when it appeared, in substance, that the defendant, who was the president, and his brother, John A. Kenyon, who was the cashier of the Warwick Bank, being the owners of all but a very few of the shares which composed the capital stock of that bank of $25,000 only, sold out their interest in the bank to a company of persons from out of the State, for a bonus of $11,000, of which the defendant's share was $7,500, stipulating to receive, and receiving, all the valuable notes and checks of the bank, including their own, in payment for their stock and said bonus; the bank receiving, in lieu thereof, the notes of the purchasers. It appeared, also, that this appropriation and exchange of the securities

of the bank had never been approved by the number of qualified directors required by the charter. Much evidence was submitted on both sides, tending to show the pecuniary condition of the purchasers and their probable designs, and the knowledge or ignorance of the defendant that they were insolvent adventurers, whose purpose was to get hold of the bank, in order that they might use it as an instrument by which to defraud the public. Upon the first rumor of the transaction to which the evidence related, it further appeared, that a commission had been issued, and that upon the complaint of the commissioners to this court the bank had been enjoined, and the plaintiff appointed a receiver to wind it up, under the 47th section of Ch. 126 of the Revised Statutes.

The presiding judge charged the jury, that if they were satisfied from the evidence, that the defendant, in breach of his trust as president of the Warwick Bank, had appropriated to himself its valuable securities, since paid, in payment for his stock and bonus, leaving the place of such securities to be supplied to the bank, in the notes of the purchasers, known to him to be worthless,—and this in the course of a transaction the purpose of which was to defraud the public,—the receiver might recover back the value of the securities without tendering to the defendant his stock ; that the receiver represented not only the corporation and its officers and stockholders, but all the creditors, of every kind, of the bank ; that, in order to recover in this action, the receiver need not satisfy the jury that some billholder, depositor, or other creditor, or some stockholder, had been injured by the act of the defendant, but merely, that this was property out of which the bank had been defrauded,—which, when recovered, would be administered according to law ; and that, in such case, it could not be set up, in defence to the action of the receiver, that the bank was *in pari delicto* with the defendant.

The court also refused to admit to pass, as evidence to the jury, memoranda of alleged discounts, made on the books of the bank, at a meeting held by persons not shown to have been legally elected directors of the bank, after the time of the transactions which are the subject of this suit, and after the defendant had finally left the bank.

The jury having rendered for the plaintiff a verdict for the value of the securities appropriated by the defendant, with interest, to wit, for the sum of $21,608.25, the defendant now moved for a new trial for error of law in the above instructions, and for not admitting said evidence, and also upon the ground that the verdict was against the weight of the evidence.

*T. A. Jenckes, for the motion :—*

I. The court should have charged the jury, that the plaintiff, in respect to this suit and the subject of it, had no other power or right than the bank would have had, if the suit had been brought by it. Rev. St. Ch. 126, § 50 ; *Lincoln* v. *Fitch*, 42 Maine, 456, 470.

II. The court should have charged the jury, as requested, that before the plaintiff could recover in this action, he should satisfy the jury that some billholder, depositor, or other creditor, or some stockholder, had been injured by the act of the defendant.

III. The court did not charge the jury, as requested, that if the transactions, involved in this suit, between the corporation and the defendant were illegal, and if the amount sought to be recovered had come into the possession of the defendant through such illegal transactions, that both parties were *in pari delicto*, and the plaintiff could not recover. *Spalding* v. *Bank of Washington*, 12 Ohio, 544.

IV. The plaintiff should have tendered back the stock sold by the defendant for the securities of the bank, before seeking to recover in this action the value of the latter. *Randlet* v. *Herren*, 20 N. H. 102 ; Chitty on Cont. 385, 388, 389.

V. The court should have admitted the memoranda ruled out, as they would have shown the completion, by the discounts made by the bank, of the contract on the part of the bank, and the good faith of all parties.

*Hayes, with whom was Eames, and W. E. Curtis, of New York, against the motion :—*

I. The charge of the court was correct, in stating, in substance, that the receiver represented the creditors of the bank as well as the bank, against the fraud of its officers, and had powers for that purpose. 1. The receiver has such powers, otherwise the purpose of his appointment would be defeated. One purpose is, to pre-

vent the public and those having funds in the custody of the bank from being defrauded. Supplement, Rev. St., ch. 243, § 47. During the appointment of the receiver, all suits and legal process against the bank for the collection of debts are stayed. Ib. § 50. It is only through the receiver, *ex necessitate,* that the creditors can work out their rights. 2. That receivers have the powers stated by the court is well settled by authority. Edwards on Receivers, pp. 5, 141, 274; *Nathan* v. *Whitlock,* 9 Paige, 152; *Gillett* v. *Moody,* 3 Comst. 479; *State of Ohio* v. *Leavitt,* 3 Seld. 328; *Austin* v. *Daniels,* 4 Denio, 299; *Iddings* v. *Bruen,* 4 Sandf. 417. 3. If the rule of law be as stated by the defendant, a new trial ought not to be granted, because, upon the facts of this case the bank could have sustained this action against the defendant.

II. 1. If the rule of law be as is claimed by the defendant, it follows, that the rights of each billholder, depositor or other creditor, and of each stockholder, must either have been legally determined before any suit could be brought against the defendant for any indebtedness, or else be determined in the action against the defendant, to which they were not, and could not have been made, parties. 2. Even if the rule be conceded, it furnishes no ground for a new trial, because, upon the evidence in the case, it appears there were billholders, creditors and stockholders to a large amount.

III. 1. The bank was, in no sense, a party to the fraudulent transaction which was the subject of the action, and could not have been *in pari delicto* with the defendant. 2. The rule of law, as stated by the defendant, is applicable only when the parties to the suit are parties to the fraudulent transaction. There was no quorum of the board present at this transaction, so that the bank was not represented.

IV. 1. The court properly refused to charge that the action could not be maintained by the plaintiff until he proved that he tendered back the shares parted with by the defendant, because it was not shown that the plaintiff, as receiver, or the bank, ever held the shares parted with. 2. Neither the bank nor the plaintiff was a party to any contract with the defendant; no contract was therefore made that could be rescinded by them. The rule

of law stated by the plaintiff is not applicable to the facts of the case. 3. The defendant transferred his stock to Spooner and McLean, and received his pay out of the assets of the bank, and illegally and fraudulently converted them to his own use ; the court, therefore, properly charged the jury, that the plaintiff could recover without tendering back stocks conveyed to others, and which it was not in the power of the bank or of the receiver to control. *Masson* v. *Bovet*, 1 Denio, 69.

V. The memoranda of alleged discounts were properly excluded by the court. The evidence was, that at the meeting at which said alleged discounts were made, there was but one director present, and that the defendant had left the bank with the assets thereof, before any such alleged discounts were made, or such meeting held, which was the only meeting ever pretended to have been holden after the sale of the bank.

AMES, C. J. This is an action of assumpsit, brought by the plaintiff, as receiver of the Warwick Bank, to recover of the defendant, late the president thereof, the value of certain securities of the bank, fraudulently, and without authority, or value given, appropriated by him to his own use, as so much money by him had and received to the use of the bank. That whilst president of the Warwick Bank, the defendant, tempted by a large bonus, sold his stock, being the large majority of the whole capital stock of the bank, to irresponsible persons from other and distant states, stipulating and receiving therefor and for his bonus, all the valuable assets of the bank, and knowing, or having every reason to believe, that their place was to be supplied by the worthless notes of the purchasers, has been, after a full trial, found by the verdict of a jury ; and further, that this has been done without the prior assent, or subsequent ratification, of a board of directors authorized by the charter of the bank to act for it, and for the purpose of making the bank, through large and illegal issues of paper, the instrument of swindling the public. That this last portion of the scheme was not fully carried out by the purchasers, is due only to the intervention of commissioners appointed under the bank act, who early applied for and obtained from this court an injunction and a receiver, that the threatened mischief might be stayed, and by the winding up of the bank,

justice, as far as possible, done to its creditors of every degree. Although the motion for a new trial, filed by the defendant, alleges that the verdict in this case was against the weight of the evidence, yet this ground was not pressed at the hearing of the motion, and we are not aware of any just view of the evidence that will sustain it.

The first objection urged to the verdict is, that the court misdirected the jury when instructing them that the plaintiff represented the creditors of the bank, and could look behind its acts in the assertion of their rights. It is difficult, however, to see the force of this objection in a case where the charge and the proof is, that the defendant, in breach of his trust, as president of the bank, connived with sharpers to sell out the bank to them, and take payment from them in the assets of the bank, knowing, or having every reason to know, that their purpose in the purchase was to defraud the public. One would think, especially if this was done without authority even formally legal, that it was a wrong for which the bank itself might have redress, if it was ever rescued from the hands into which it had fallen so as to be able to seek it, and that the plaintiff might maintain this action as representing the corporation only. Considering, however, the purpose of the bank act, we deem this a very narrow and false view of the scope of the receivership provided by it. The proceeding under which the receiver is appointed, is not a proceeding *by* the corporation, but *against* it. It is not *for* the corporation, but exclusively for the public, as billholders, and for those having funds in its hands as depositors; and it is only when they are in danger of being defrauded, or the bank has become insolvent, that commissioners or the court can act. Rev. St. Ch. 126, § 47. The duty of the receiver, as marked out by the statute, regards the creditors, and not the corporation, which is to be wound up. The 49th section provides for the payment of the debts of the corporation out of its assets, giving a preference to billholders; and it is only after the creditors are satisfied and the expenses of the trust paid, that the stockholders are to receive anything. It is true, that by the 50th section, the receiver is clothed with all the powers and rights of the corporation in respect to the collection of debts, conferred upon it by charter or

otherwise; but this, so far from being designed to limit his powers, was designed to clothe him with special powers and authorities. His principal office, under the law, as we have seen, is, to care for and represent the interest of creditors; and in all such cases, the receiver or assignee, call him by whatever name you will, may take advantage of any fraud in derogation of the rights of creditors, to which the insolvent debtor was a party. A deed which is void as against creditors, is void also as against those who, by law, represent creditors. Doe, d. *Grimsby* v. *Ball*, 11 M. & W. 531, 533. If this principle were not applied to the receivers of insolvent banks, the receivership would, in a great number of cases, be of very little use.

The second objection to the verdict, that the court refused to instruct the jury, that in order to recover in this action, the plaintiff should satisfy the jury that some billholder, depositor, or other creditor, or some stockholder, had been injured by the act of the defendant, wholly ignores the existence of the bank as a legal entity, created by law for certain purposes, possessed and required to be possessed of certain property and endowed with certain rights, to enable it to perform them, and confounds the corporation with its creditors and corporators. Above all, it ignores the duties which such an institution, dangerous from its power to issue bills as a circulation, is bound to perform to the public; and silently lays aside the course of administration of its property and effects, marked out by the law, when, as in this case, for a violation of, or an inability to perform, those duties, it is undergoing the process of winding up. The bank act, in such case, imperatively requires the receiver to collect the property and effects of the bank,—its officers being enjoined from intermeddling therewith,—and to apply the proceeds thereof to the payment of the expenses of the trust, to the payment of the bills of the bank, to the payment of its other debts, in the order named, and to distribute the balance, if any, amongst the stockholders, equally, according to their rights. Rev. St. Ch. 126, § 49. For the purpose of this administration of the property, the receiver is, as we have seen, by the 50th section, expressly armed with all the powers and rights, special as well as general, of the corporation, to recover and collect it. If, therefore, the property sought

in this action is the property of the corporation, of which the defendant has wrongfully deprived it, we see no reason for imposing upon the receiver, as a condition to his right to recover it, that he should prove a special injury from the wrong to some creditor or stockholder of the bank. In bringing his action, the plaintiff is in the performance of a statute duty, necessary to the distribution required of him by law. The only questions are,— was this the property of the bank? and has the defendant, in breach of his trust as an officer of the bank, wrongfully appropriated it to his own use? and, under such circumstances, will an action for money had and received lie for it, at the suit of the receiver? The first two of these questions have been answered by the verdict; and as the note and check of the defendants were due to the bank, and the other securities were collected by him before this action was brought, we see no reason why the receiver might not, under the general rule, waive the tort, and pursue the defendant for so much money had and received to the use of the bank. On the trial of this action, it was of no consequence who, or whether any one but the bank, would be injured by this wrongful appropriation of its property. Indeed, until the property is collected and ascertained, and the expenses of the trust paid, it could not be known who, or whether any one but the bank, would suffer from this wrong, or to what extent. In this case, there had been no call by the receiver for the bills of the bank, for the very reason that he was delayed by the defendant in collecting the property with which to pay them; and he was not bound to know, and still less bound to prove, their existence or amount, in order to be entitled to collect the property of the bank, that he might administer it as the statute directs.

Again, it is objected that if the property of the bank came into the possession of the defendant in the course of an illegal transaction, that both parties are *in pari delicto*, and for that reason the plaintiff cannot recover; and that the court refused to give this in charge in application to the case at bar, but did charge, that if the bank had been fraudulently or illegally deprived of its funds or paper by the defendant, who had converted them to his own use, and reduced them to money, the plaintiff could recover the amount so converted in this action.

In this suit between a bank and its principal officer for abstracting, without warrant or value, all its assets, it is difficult to see how the parties can be *in pari delicto*,—how the victim can be equally in fault with the officer, who, in breach of trust, has abstracted its funds. In such a contest, the only moral agent,—when, in addition to this fraud, further fraud upon the public was designed,—was the officer, who was capable of reason as well as of discourse, and not the legal entity, whose interests he betrayed, and which was capable of neither. To talk about equality of wrong in such a case, would be, not only to shut our eyes to all *moral* distinctions, but to the very nature of things,—both of which the common law is supposed to recognize.

A further ground for a new trial laid in this motion is, that the court, though requested, refused to charge, that before this action could be maintained by the receiver, he must, as a condition precedent to his right to recover, prove that he tendered back, or offered to convey to the defendant, the shares in the capital stock of the bank, parted with by the defendant in consideration of the securities for which this suit is brought.

Had the bank bought his shares, there would have been some pretence for this request; but we cannot see why the bank should return shares sold by the defendant to others, and for which he wrongfully took his pay out of the bank-till, in order to recover of him the amount thus abstracted. The last person upon whom the obligation to return rested, we should think, was the victim of such a wrong.

The last objection to this verdict, is, that the court refused to admit, as evidence to the jury, the memoranda of discounts made on the books of the bank, at a meeting held by persons not shown to have been legally elected as directors of the bank, after the time of the transactions which are the subject of this suit, and after the defendant had finally left the bank. In other words, in consideration of a large bonus, the defendant conveys his stock in this bank to worthless adventurers whom he would not trust with a penny, first carrying off all the valuable assets of the bank in payment, and then desires to prove by certain memoranda kept by these persons in the books of the bank, which, according to the charter requisites they were not entitled to represent, that

*the bank* received their valuable notes by discount, in exchange for those abstracted.

The answer to this objection is obvious, that memoranda kept by those who are not entitled to represent a corporation, are not evidence, merely as such, of its doings ; and if they were, the subsequent substitution, by the purchasers, of their own worthless paper for that abstracted by the defendant from the bank, would not help his defence, in the least.

For these reasons this motion must be overruled, and judgment be entered upon the verdict.